# United States Court of Federal Claims
No. 18-1225L
June 19, 2019

_____

**STEPHANIE GARCIA RICHARD,**
**New Mexico Commissioner of Public Lands,**

    *Plaintiff*,

    v.

**UNITED STATES OF AMERICA,**

    *Defendant.*

_____

*Marshall J. Ray*, Law Office of Marshall Ray, Albuquerque, NM for plaintiff.

*Nathanael B. Yale*, United States Department of Justice, Washington, DC, for defendant.

**ORDER**

**Hodges,** *Senior Judge.*

    Plaintiff Stephanie Garcia Richard, New Mexico's commissioner of public lands, filed a complaint alleging that defendant took its trust lands in violation of the Fifth Amendment of the Constitution.[1] Plaintiff claims that defendant, acting through the United States Department of Defense, the United States Air Force, and the Federal Aviation Administration, appropriated and physically occupied its airspace thereby preventing the construction of wind turbines contemplated in its lease agreement with a third party wind developer. It also contends that defendant has implemented and enforces unreasonable and onerous regulations regarding the airspace above its trust land property.

---

[1] Aubrey Dunn was New Mexico's commissioner of public lands when this complaint was filed. Stephanie Garcia Richard was elected subsequently to the position and took office in January 2019. Pursuant to Rule 25 of the Rules of the United States Court of Federal Claims, Ms. Dunn's successor, Ms. Richard, is automatically substituted as plaintiff.

Defendant moved to dismiss both plaintiff's regulatory and physical taking claims, each for lack of subject matter jurisdiction and failure to state a claim. Defendant's motion to dismiss plaintiff's regulatory and physical taking claims is granted.

## BACKGROUND

Plaintiff is the duly elected commissioner of public lands for the State of New Mexico. Under New Mexico law, plaintiff has "jurisdiction over all lands owned . . . by the state, except as may be otherwise specifically provided by law." N.M. STAT. ANN. § 19-1-1 (1978) (stating that the commissioner "shall have the management, care, custody, control and disposition thereof in accordance with the provisions of this chapter and the law or laws under which such lands have been or may be acquired").[2] The New Mexico Constitution further provides that: "The commissioner of public lands shall . . . have the direction, control, care and disposition of all public lands." N.M. CONST. ART. XIII, § 2.

Plaintiff, as custodian over New Mexico's trust lands, entered into a lease agreement with a wind developer in 2013 to develop wind energy projects in multiple counties in New Mexico.[3] Plaintiff maintains that the "intent" of the lease agreement was to construct 114 wind turbines. Compl. ¶ 10. The lease, however, does not specify the number of wind turbines. Plaintiff maintains that the tracts of land in Torrance County, New Mexico, which are designated for turbine construction, are not amenable to any beneficial economic use beyond limited livestock grazing. It states that the lands are far from any population center and have limited water, infrastructure, and natural resources.

The lease divides the wind energy development into phases: the initial phase, operation phase, and decommission phase. During the initial phase, the developer was to assess the project's feasibility and to obtain government approvals, including filing notice to obtain FAA's hazard/no hazard determinations. The Department of Transportation, acting through FAA, is authorized to regulate the safe and efficient use of navigable air space and to issue air traffic rules and regulations. Plaintiff claims that defendant's implementation and enforcement of onerous regulations above its trust lands and its actions constitute an unlawful appropriation and physical occupation of its trust property.

---

[2] Plaintiff states that the United States granted the lands to New Mexico in trust "to provide financial support for purposes specified in the grants, including 'common schools' (primary public education), state universities, state hospitals and other state institutions." Compl. ¶ 2.

[3] The exhibits submitted along with the complaint indicate that several entities are involved in this lease agreement. Unless stated otherwise, we refer to these entities collectively as the "wind developer" or "the developer."

A. *Framework for FAA's Review of Notices Regarding Proposed Constructions*

Under 49 U.S.C. § 40103(a), "the United States Government has exclusive sovereignty of airspace of the United States." Section 40103(b) provides that FAA "shall develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace." An applicant seeking to build a structure that is more than 200 feet above ground level must notify FAA. *See* 49 U.S.C. § 44718(a); 14 C.F.R. §§ 77.5, 77.9.

After receiving a notice, FAA decides whether construction may result in an obstruction of the navigable airspace, an interference with air navigation facilities and equipment or the navigable airspace, or, after consultation with the Secretary of Defense, an adverse impact on military operations and readiness. 49 U.S.C. § 44718(b)(1). Where FAA decides that construction may result in an obstruction, an interference, or an adverse impact, it then "conducts an aeronautical study to decide the extent of any adverse impact on the safe and efficient use of the airspace, facilities, or equipment." *Id.* This aeronautical study includes finding made by DoD as to whether the project would result in an "unacceptable risk to the national security of the United States." § 44718(b), (f).

Pursuant to 10 U.S.C. § 183a, DoD established the Military Aviation and Installation Assurance Siting Clearinghouse, which coordinates DoD's review of notices filed pursuant to § 44718. The Clearinghouse conducts a preliminary review, which consists of assessing the risk of any adverse impact of energy project on military operations and readiness; and identifying any feasible and affordable actions that could "mitigate the adverse impact and to minimize risks to national security while allowing the energy project to proceed with development." 10 U.S.C. § 183a(c). After receiving a notice from FAA, the Clearinghouse must notify FAA if the proposed project will not have an adverse impact on military operations and readiness or if its adverse impact is sufficiently attenuated that it does not require mitigation. 32 C.F.R. § 211.6(a)(3)(i)–(ii).

Where the Clearinghouse determines that the proposed project may have an adverse impact on military operation and readiness, it will notify the applicant of its determination and offer to discuss mitigation. § 211.6(a)(3)(iii). If the applicant agrees to discuss mitigation, DoD and the applicant have ninety days to reach a resolution. § 211.6(b)(1). If they are unable to reach an agreement on mitigation or the applicant refuses to negotiate, the Clearinghouse will determine whether the project will present an unacceptable risk to national security. § 211.6(b)(2), (c). If the project presents an unacceptable risk, the Clearinghouse communicate its recommendation to DoD. *Id.* DoD will consider the recommendation and mitigation options; and if it determines that the project will result in an unacceptable risk, it will convey its determination to FAA. *Id.*

Upon completing the aeronautical study to decide the extent of any adverse impact on the safe and efficient use of the airspace, FAA includes the findings made by DoD regarding unacceptable risk to national security. 49 U.S.C. § 44718(b). DoD's determination that a project would result in a risk to national security is not considered to be a substitute for any determination required of FAA. 10 U.S.C. § 183a(g). And DoD may not object to a project, except where it determines, after giving full consideration to mitigation, that it would result in an unacceptable risk to national security. § 183a(e). If DoD decides there is such a risk, it must submit a report to Congress with its findings. *Id.*

FAA will issue any of the following determinations after completing the study: (1) a Determination of Hazard to Air Navigation when the aeronautical study concludes that the construction will exceed an obstruction standard and would have a substantial aeronautical impact, (2) a Determination of No Hazard to Air Navigation when the aeronautical study concludes that the construction will exceed an obstruction standard but would not have a substantial aeronautical impact to air navigation, or (3) a Determination of No Hazard to Air Navigation when the proposed construction does not exceed any of the obstruction standards and would not be a hazard to air navigation. 14 C.F.R. § 77.31. Applicants may petition FAA for review of its determination. 14 C.F.R. §§ 77.37–77.41.

B. *Summary of Plaintiff's Regulatory and Physical Taking Claims*

Plaintiff maintains that defendant's implementation and enforcement of these regulations resulted in an unlawful taking of its trusts lands. During the operation phase of the lease, plaintiff contends that the wind developer was to build and maintain *inter alia* the wind power facilities. The lease provides that the developer would pay rent during this phase based on its gross revenues from selling wind power generated by the wind turbines on the trust lands. Plaintiff contends that the wind turbines contemplated in the lease represent a viable way to derive revenues from the otherwise low-value lands. Plaintiff maintains, however, that defendant's regulations and actions have indefinitely precluded the extraction of anything other than a nominal benefit from its trust lands.

Plaintiff claims that in 2017 the wind developer sought to obtain the permits and to provide the notices to begin construction. It states that construction involved providing notice of any structures 200 feet above ground level (*see* 14 C.F.R. § 77.9) and obtaining "No Hazard" determinations from the Federal Aviation Administration (*see* 14 C.F.R. § 77.31). Plaintiff states that the air space below 500 feet above ground level is generally non-navigable. It contends that the inability to obtain these determinations is fatal to the construction of wind turbines because other agencies will withhold permits for construction if determinations cannot be obtained and financing becomes impracticable.

Plaintiff contends that, when the wind developer sought to obtain the "No Hazard" determinations from FAA to build the turbines, DoD advised the developer in a series of meetings that sixty-one of the turbines could not receive determinations because they fell within a critical military training route established in the 1970s.[4] Military aircrafts regularly fly below 500 feet above ground level in this training route. The developer explained to plaintiff in February 2018 that they had reached a negotiated solution with DoD, which precluded them from seeking FAA approval on some of the turbines within the route, but that would allow them to preserve seventy-three of the planned turbines.

Plaintiff claims that the physical occupation of its low altitude airspace along with the refusal to issue "No Hazard" determinations render the construction and operation of many potential useful structures, including the turbines, impossible or impracticable. It states that it wrote to the Secretary of the Air Force in February 2018 for compensation for lost revenue to the trust but did not receive a response. Plaintiff then wrote to another official at the Air Force, explaining that it had not received a response and expressing its belief that it had exhausted its remedies to address the revenue lost. It then sent a follow up message via email. The Air Force replied in May stating that it was formulating a response to its February 2018 letter. Plaintiff states that it never received a response.

Plaintiff claims that the Air Force's occupation of the airspace below 500 feet above ground level will cause the loss of $25 million over the life of the lease and that it deprives New Mexico of most of the economic beneficial use of its trust land property.[5]

Plaintiff requests *inter alia* that this court:

(1) declare pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and 15 U.S.C. §§ 701–02, 704, that:
    i.    defendant's refusal to issue "No Hazard" determinations is arbitrary, capricious, an abuse of discretion and/or unlawful and that such refusal constitutes a taking;

---

[4] "The term 'military training route' means a training route developed as part of the Military Training Route Program, carried out jointly by the Federal Aviation Administration and the Secretary of Defense, for use by the armed forces for the purpose of conducting low-altitude, high-speed military training." 10 U.S.C. § 183a(h)(6).

[5] Plaintiff states that this figure is based on the inability to complete development on sixty-one of the wind turbines, a reduction of revenue estimated by the wind developer to be at around $650,000 per year. Plaintiff claims that the remaining seventy-three turbines correspond to $750,000 per year of revenue or $29 million over the life of the project.

  ii. plaintiff holds a vested right in the property, including the airspace below 500 feet above ground level over state trust lands as against defendant and that defendant's physical occupation of the airspace constitutes a taking requiring compensation;

(2) enjoin defendant, preliminary and/or permanently, from interfering with plaintiff's use of the trust property; and

(3) declare pursuant to the Tucker Act, 28 U.S.C. § 1491, that defendant's occupation and regulation of the airspace 500 above ground level over trust lands constitutes a taking in violation of the Fifth Amendment, which requires compensation.

Defendant filed a motion to dismiss for failure to state a claim and for lack of subject jurisdiction. It maintains that the court lacks jurisdiction to hear plaintiff's claims pursuant to the Declaratory Judgment Act, the Administrative Procedures Act, and for injunctive relief. And it maintains that plaintiff's regulatory and physical taking claims should be dismissed, each for lack of subject jurisdiction and for failure to state a claim.

## LEGAL STANDARD

In deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, we must accept as true the undisputed factual allegations in the complaint and must construe reasonable inferences in favor of the plaintiff. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Id.*

To avoid dismissal for failure to state a claim, under Rule 12(b)(6), a "complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The court must accept as true all factual allegations in the complaint and "indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). The court, however, is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Plaintiff maintains that a combination of defendant's regulatory and physical activities prevents it from putting large tract of land to economically beneficial use.

Defendant moved to dismiss plaintiff's regulatory and physical taking claims for lack of subject matter jurisdiction and for failure to state a claim. Plaintiff's claim that a combination or a totality of defendant's actions made it difficult to establish the parameters of its taking claims. We understand plaintiff's regulatory taking claim to be based on either FAA's determination and/or DoD's role in blocking this determination; and plaintiff's physical taking claim to be based on defendant physically invading its trust land property by flying military planes lower than 500 feet above ground level.

### A. *Regulatory Taking*

Defendant contends that plaintiff's regulatory taking claim should be dismissed (1) for lack of jurisdiction as it is not ripe and (2) fails to state a claim for various reasons, notably because it impermissibly relies upon not receiving "No Hazard" determinations.

#### 1. *Lack of Subject Matter Jurisdiction*

Defendant contends that plaintiff's claim is not ripe because it fails to allege that the developer (or anyone else) obtained any final determinations from FAA, as DoD does not issue them. To the extent plaintiff alleges that seeking final determinations from FAA would have been futile, defendant contends that futility is a limited doctrine that does not excuse a party from the requirement that it exhaust administrative remedies. Plaintiff counters that if FAA determinations are advisory, then the exhaustion requirement cannot apply to prevent jurisdiction. It contends further that FAA's determinations are only a symptom of the larger decision by defendant to take its property. We disagree.

Plaintiff's complaint requires us to scrutinize defendant's regulatory actions regarding hazard/no hazard determinations, which defendant contends are advisory. Plaintiff claims that defendant's actions regarding these determinations are only a symptom of its unconstitutional actions. Yet, plaintiff's characterization of FAA's determinations as merely symptomatic is not consistent with the pivotal role it assigns to these determinations in its regulatory taking claim. Plaintiff's complaint frames the inability to obtain these determinations as fatal to the construction of the wind turbines. Plaintiff maintains that other regulatory agencies will withhold permits and financing will become impracticable, if it cannot obtain "No Hazard" determinations from FAA.

Although FAA's determinations are advisory in nature, the requirement that a developer notify FAA of a proposed project, which triggers a review process and a study, is mandatory. *See* 14 C.F.R. § 77.5 (stating that notice to FAA is required). This notice

requirement serves to promote safety in air commerce, the efficient use of airspace, and national security interests.

Plaintiff justifiably questions the coherence of having to "exhaust" a procedural requirement that results in a determination that is not legally enforceable. *See Flowers Mill Assocs. v. United States*, 23 Cl. Ct. 182, 188–89 (1991) ("FAA's hazard finding was advisory only and not legally enforceable."). Yet, the basis of its regulatory taking claim is that FAA has refused to or is unable to issue a determination, or is likely to issue an unfavorable one. Plaintiff may have reason to suspect that FAA's determination will be unfavorable. However, if FAA were to issue a favorable determination, which it may still, it is unclear that a controversy requiring judicial review of defendant's implementation of these regulations would exist.

Plaintiff conflates the exhaustion of administrative remedies with the finality requirement of administrative actions. Plaintiff argues that the Federal Circuit disfavors exhaustion requirements for non-mandatory or permissive administrative remedies. Pl.'s Reply at 5–6 (citing *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003)). In support, plaintiff refers to the Federal Circuit's pronouncement in *Martinez* that:

> [T]his court and the Court of Claims have long held that, in Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit. As a corollary of that rule, the court has held that a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy.

*Martinez*, 333 F.3d at 1304. Plaintiff's reliance on *Martinez* is misplaced, however. *Martinez* involved the exhaustion of administrative remedies in relation to a military correction board, a permissive remedy—not a mandatory administrative action. *Id.* (discussing the effect of a military correction board remedy on the statute of limitations).

The Federal Circuit, in fact, explained that: "if a dispute is subject to mandatory administrative proceedings, the plaintiff's claim does not accrue until the conclusion of those proceedings." *Id.* Unlike the board in *Martinez*, notice to FAA is mandatory and plaintiff has not established that procedures relative to this notice have been concluded.

The requirement to notify FAA and the ensuing study are not remedies made available to the developer, but more of an administrative procedure or action, which requires finality, before judicial review. This distinction created some confusion in the briefs. The United States Supreme Court acknowledged the overlap between the two, but explained that:

> The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192–93 (1985) (citations omitted). In line with this distinction, judicial review of plaintiff's claim must await FAA's definitive position to assess more concretely the injury alleged. Thus, to characterize notice to FAA and FAA's ensuing determination as a remedy, which must be exhausted, is not necessarily accurate. This distinction is ultimately not material here.

Regardless of whether the developer's notice to FAA and the ensuing review process for issuing "No Hazard" determinations are understood in terms of an exhaustion requirement or a finality requirement, we lack jurisdiction. Plaintiff has not established that the predicate FAA determination for its taking claim is final; this court is without jurisdiction to consider taking claims that are not ripe for judicial review. *Martin v. United States*, 894 F.3d 1356, 1360–61 (Fed. Cir. 2018); *see Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) ("[A] takings claim challenging the application of land-use regulations is not ripe unless 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" (quoting *Williamson Cnty.*, 473 U.S. at 186)).

Plaintiff insists that the court's inquiry should not simply focus on FAA's refusal or inability to issue "No Hazard" determinations but also on the totality of defendant's actions and communications -- namely DoD's alleged role in blocking the construction of

the contemplated turbines. Plaintiff refers frequently to FAA's refusal or inability to issue a "No Hazard" determination and DoD's contributory role in this outcome. This claim does not invalidate the ripeness issue, however. Plaintiff has not demonstrated that FAA refused or is unable to issue a determination. It has not obtained a determination from FAA but simply submitted a letter from a developer to it, which explains that DoD had informed the developer that the project would impact military training exercises. Just as importantly, the developer explained that it had reached an understanding with DoD that precluded them from seeking FAA approval on some of the wind turbines. Ex. 4 at 4.[6]

Plaintiff's claim that DoD blocked issuance of FAA's determinations, moreover, does not cohere with the legal framework for obtaining determinations. DoD's assessment of a project is not a substitute for FAA's determinations. 10 U.S.C. § 183a(g). Until plaintiff obtains final determinations from FAA, its assertion is speculative and premature; therefore, its claim is unripe. *See Williamson Cnty.*, 473 U.S. at 190–91 (stating that a court cannot evaluate the factors of a regulatory taking claim until the "agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question"); *cf. Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (holding that the futility exception to the exhaustion requirement is a narrow one and that the "mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies"). A such, plaintiff's appeal to the "totality of defendant's actions and communications" does not provide the jurisdiction we need to hear its claim.

The decision on jurisdiction is sufficient to dismiss plaintiff's regulatory taking claim. In the interest of judicial economy, however, we address defendant's motion to dismiss for failure to state a claim as it disposes of the claim more comprehensively.

2. *Failure to State a Claim*

Defendant asserts also that plaintiff's regulatory taking claim should be dismissed for failure to state a claim because it fails to allege either a categorical or a non-categorical taking. The Takings Clause of the Fifth Amendment of the Constitution states that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. AMEND. V. The court must first determine whether plaintiff has a cognizable property interest, then assess whether the governmental action at issue amounts to a compensable taking of that property interest. Where the governmental action at issue is a

---

[6] Defendant states that the "wind developer **terminated its FAA filings** for the 61 turbines after it reached a negotiated resolution with the DoD." Mot. Dismiss at 6 (emphasis added).

regulation that unduly burdens a property interest, the court conducts a regulatory taking analysis. *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377–78 (2008).

The Federal Circuit in *Huntleigh* explained that regulatory takings are divided into categorical and non-categorical takings and stated that:

> A categorical taking occurs when 'all economically viable use, i.e., all economic value, has been taken by the regulatory imposition.' Conversely, a non-categorical taking is a taking 'that is the consequence of a regulatory imposition that prohibits or restricts only some of the uses that would otherwise be available to the property owner, but leaves the owner with substantial viable economic use.'

525 F.3d at 1378 n.2 (internal citations omitted) (distinguishing between regulatory takings). In deciding a Rule 12(b)(6) motion, we must simply assess whether plaintiff alleges a claim to relief, under a regulatory taking theory, that is plausible on its face.

i.  *Non-Categorical Taking*

Defendant maintains that plaintiff's complaint fails to plead a non-categorical taking and should be dismissed. It contends that frustration of contractual expectations does not constitute a taking. It argues additionally that plaintiff's claim impermissibly relies upon not receiving "No Hazard" determinations, which cannot form the basis of a taking and that the claim should be dismissed because plaintiff had no investment-backed expectations for obtaining "No Hazard" determinations for wind turbines. We agree.

To assess whether a non-categorical taking occurred involves a fact-based inquiry, under which the court considers: (a) the character of the governmental action, (b) the economic impact of the action on the plaintiff, and (c) the effects of the action on the plaintiff's reasonable investment-backed expectations. *Huntleigh*, 525 F.3d at. 1378 n.2 (referring to *Penn Cent. Transp. Co. City of New York*, 438 U.S. 104, 124 (1978)).

Plaintiff's claim is premised on the allegation that FAA refused to or is unable to issue "No Hazard" determinations. Our court, however, has held that FAA's determinations do not provide a basis for a taking claim. *Flowers*, 23 Cl. Ct. at 189 (holding that an unfavorable FAA determination may be a stumbling block to a construction project but cannot be the basis for a taking); *Breneman v. United States*, 57

Fed. Cl. 571, 585 (2003) (finding that FAA is not empowered to prohibit a project it deems dangerous to air navigation and declining to find a taking where FAA's determination influenced a third party to deny plaintiff a construction permit); *see also Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1308 (Fed. Cir. 2015) (clarifying that *Flowers* court "denied the regulatory takings claims not because the government's action did not have any legal effect, but because the agenc[y] had *no authority to regulate*").

The court in *Flowers* recognized that while an FAA determination has "substantial practical impact," it has no enforceable legal effect. 23 Cl. Ct. at 186. In rejecting the landowner's taking claim based on FAA's determination, the court in *Flowers* referred to *Aircraft Owners and Pilots Ass'n v. FAA*, 600 F.2d 965 (D.C. Cir. 1979), which stated that:

> The FAA is not empowered to prohibit or limit proposed construction it deems dangerous to air navigation. Nevertheless, the ruling has substantial practical impact . . . . The ruling may also affect the ability of a sponsor proposing construction to acquire insurance or to secure financing. Primarily, however, the determination promotes air safety through 'moral suasion' by encouraging the voluntary cooperation of sponsors of potentially hazardous structures.

*Id.* at 186 (quoting *Aircraft Owners*, 600 F.2d at 967). The court explained that, even assuming the economic impact of the regulations interfered with plaintiff's investment-backed expectations, FAA's actions cannot be the basis of a taking "because of the voluntary nature of the regulatory scheme." *Id.* at 189. Similarly, if the wind developer were to obtain the necessary financing and state permits, "FAA would be powerless to prevent construction of the proposed" wind turbines. *Id.* at 190 (holding that plaintiff did not state a claim upon which relief could be granted). Our consideration of the advisory nature of FAA's determinations, accordingly, confirms that plaintiff fails to allege facts in its regulatory taking claim that plausibly suggest a showing that it is entitled to relief.

The court cannot evaluate the economic impact of FAA's determination and the extent to which it interferes with reasonable investment-backed expectations until FAA "has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson Cnty.*, 473 U.S. at 191; *Flowers*, 23 Cl. Ct. at 189 (finding that the voluntary nature of defendant's regulatory scheme rendered analysis of plaintiff's investment-backed expectations immaterial). However, a Fifth Amendment taking cannot result from the practical effect of an FAA hazard/no

hazard determination when that determination is not legally enforceable and FAA, as the issuing agency, lacks the power to prohibit the construction of the proposed wind project.

Defendant also moved to dismiss plaintiff's claim on the basis that frustration of contractual expectations does not constitute a taking. Plaintiff's claim, however, is not framed in terms of a claim of frustration of contractual expectations. In fact, plaintiff maintains that defendant's argument regarding frustration is a red herring, given that the case is about defendant's actions that prevented it from benefitting from its own property.

In articulating its objection, however, plaintiff states that defendant interfered with its contract and thwarted the parties' expectations and undermined its underlying property rights. In support, plaintiff refers to *United Nuclear Corp. v. United States,* 912 F.2d 1432 (Fed. Cir. 1990) as instructive. It explains that the plaintiff in *United* entered into leases with the Navajo Tribal Council to conduct uranium mining operations but that the Secretary of the Interior refused to approve the plaintiff's mining plan until the Tribal Council issued its approval, which it withheld for several years. It contends that the Federal Circuit court found that a taking had occurred because of the manner in which the Secretary had interfered with the contract between the plaintiff and the Tribal Council.

The facts in *United*, however, are distinguishable and do not lend support to plaintiff's claim. In *United*, the Tribunal Council authorized the Secretary of the Interior to conduct a public bidding for uranium mining, which the plaintiff won. 912 F.2d at 1433. After spending $5 million implementing its exploration plan, which the Secretary had approved, the plaintiff discovered uranium. *Id.* at 1434. Under the regulatory scheme there, the plaintiff's mining plan also required approval from the Secretary before plaintiff could begin mining. *Id.* at 1434. In finding that there was a taking of the plaintiff's property, the court noted that the plaintiff satisfied all regulatory requirements and that the leases required approval from the Secretary to be effective. *Id.* at 1433–34.

Unlike *United*, plaintiff's wind development project does not require FAA's determination to be effective in the same manner that the mining plan in *United* required the Secretary's approval. Whereas the plaintiff in *United* could not begin mining without the Secretary's approval, FAA cannot prohibit or limit proposed constructions. *See* 25 C.F.R. § 216.7 (stating that before starting mining operations under a lease, approval of the mining plan is required). As such, defendant's alleged failure to issue hazard/no hazard determinations is dissimilar from the interference found in *United* and cannot be the basis of a taking. *See also Palmyra Pacific Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1365 (Fed. Cir. 2009) ("As a general matter, the government does not 'take' contract rights pertaining to a contract between two private parties simply by engaging in lawful action that affects the value of one of the parties' contract rights." (referring to

13

*Omnia Commercial Co. v. United States*, 261 U.S. 502 (1923))). Plaintiff does not identify an authority with the power to regulate and which prohibited its project. Thus, it fails to state a claim that plausibly suggests a showing that it is entitled to relief.

      *ii.*    *Categorical Taking*

Defendant contends that plaintiff fails to properly allege a categorical taking and that its allegations concerning overflights plainly raise a physical, not a regulatory taking. It claims that that there are two circumstances where a categorical taking may exist and that plaintiff does not satisfy either: (1) where the regulation compels a physical invasion of property; or (2) where it denies all economically beneficial or productive use of land. Mot. Dismiss at 22 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982) and *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) respectively). In support, it contends that the developer agreed it would continue the project on seventy-three turbines, which would result in $750,000 per year of revenue during the lease and that plaintiff stated that the land could be used for limited livestock grazing. And it reiterates its claim that FAA's determinations cannot compel a physical invasion of plaintiff's land.

In response, plaintiff contends that cattle grazing is extremely limited on its lands because no infrastructure or water supply is available on the land. Pl.'s Resp. at 7 (stating that grazing is of negative economic value because the nominal amounts paid for such leases ($100 per year) do no exceed the costs imposed on the land by such grazing). It maintains that a taking has occurred on the turbines outside of the developer's agreement with DoD; and that defendant's military flights have physically invaded its property.

The court cannot manufacture a claim on plaintiff's behalf from the disparate set of facts it has alleged. Plaintiff has focused its taking claim on FAA's refusal to issue "No Hazard" determinations. In the discussion of plaintiff's non-categorical taking claim, above, we established that FAA lacks the power to prohibit the construction. FAA's determinations cannot compel a physical invasion of plaintiff's land; nor can DoD's agreement with the developer be characterized as compelling such an invasion. Therefore, plaintiff fails to state a claim suggesting that it is entitled to relief. Plaintiff's allegations concerning overflights are more appropriately addressed according to a physical taking framework. *See Andrews v. United States*, 108 Fed. Cl. 150, 156 (2012) (stating that such claims have been analyzed as physical takings).

### B. *Physical Taking*

Plaintiff's physical taking claim that the Air Force physically invaded its property by flying military airplanes lower than 500 feet above ground level must be dismissed as well. Defendant contends that this allegation amounts to an avigation easement claim that (1) lacks subject matter jurisdiction because it is time barred; and (2) fails to state a claim because plaintiff has not pled the necessary factual allegations to show a taking through an avigation easement.

The statute of limitations for filing claims against the United States Defendant is six years. *See* 28 U.S.C. § 2501. Defendant contends a claim accrues when the alleged act that causes the taking occurs, which in its view is the 1970s. This was when defendant started using the flight route, not when plaintiff possessed actual knowledge of all relevant facts or when the consequences of the act became "most painful." Def.'s Mot. Dismiss at 28 (quoting *Fallini v. United*, 56 F.3d 1378, 1383 (Fed. Cir. 1995)). Defendant also refers to *A.J. Hodges Ind. Inc. v. United,* 174 Ct. Cl. 259, 264–66 (1966) to show that the date of accrual is when defendant's activity "began to operate regularly and frequently over a plaintiff's property at low altitudes with the intention to continue such flights indefinitely." Def.'s Reply at 16.

Plaintiff counters, however, that according to the accrual suspension rule, "[i]t is a plaintiff's knowledge of the facts of the claim that determines the accrual date." *Young v. United States*, 529 F.3d 1380, 1384–85 (Fed. Cir. 2008) (stating that, under this rule, the accrual of a claim is suspended, for purposes of the statute of limitations at § 2501, until plaintiff knew or should have known that the claim existed). To suspend the accrual of a claim, plaintiff must "either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was inherently unknowable at the accrual date." *Id.* at 1384 (internal quotations omitted).

Plaintiff emphasizes that the events creating liability in this case had not yet occurred, citing *United States v. Causby*, where the Supreme Court noted that: "'it is the character of the invasion [of claimants' domain], not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking.'" 328 U.S. 256, 266 (1946) (quoting *United States v. Cress*, 243 U.S. 316, 328 (1917)). Thus, plaintiff maintains that for a physical taking to accrue, substantial damages must have been incurred. It contends that the cause of action accrued only when defendant's act caused substantial damages, which, in its view, was in 2013 when the opportunity arose to extract economic benefit from the land using newly available wind technology.

15

To establish when the statute of limitation begins to accrue, the focus of a court's inquiry is on assessing when plaintiff knew or should have known that the Government's physical taking of its property occurred. Under this objective standard, a cause of action accrues "when all the events have occurred that fix the defendant's alleged liability and entitle plaintiff to institute the action." *Fallini*, 56 F.3d at 1380; *Japanese War Notes Claimants Assn. v. United States*, 178 Ct. Cl. 630, 632 (1967) (stating that plaintiff must show when events which directly affect the rights asserted in this suit took place). The Court in *Causby* recognized that a landowner has a claim to the airspace over his land and may institute a physical taking claim where frequent and low flights by airplanes over its land cause direct and immediate interference with his enjoyment and use of the land. *Causby*, 328 U.S. at 265. The cases following *Causby* have required that the interference with enjoyment and use be substantial. *Brown v. United States*, 73 F.3d 1100, 1102 (Fed. Cir. 1996) (referencing several cases, including *Bacon v. United States*, 155 Ct. Cl. 441 (1961)).

While we must draw reasonable inferences in plaintiff's favor, it has not borne the burden of establishing jurisdiction in this court. For example, plaintiff has presented scant evidence that the opportunity to extract economic benefit from the land using newly available wind technology did not arise before 2013. Plaintiff's claim is an appealing one, particularly if we were to consider that the right to use the trust lands in this way and hence the injury were inherently unknowable at the accrual date proposed by defendant. Plaintiff neglects to develop and support its assertion regarding when the opportunity to extract economic benefit from the land using newly available technology arose. Given that information, the court could assess when plaintiff knew or should have known that defendant's flights were flying so low so as to substantially interfere with its right to use the trust land in an economically beneficial way. Excepting one reference in its response, however, plaintiff has offered no evidence of when wind technology became available.

Plaintiff has neither adequately established when the opportunity of using new technology arose nor demonstrated when it knew or should have known that defendant's flights were flying in the air space above its land. Plaintiff has not established that its claim was filed within the statutory period; therefore, we lack jurisdiction over this claim.

## CONCLUSION

Plaintiff's regulatory taking claim is trapped in a veritable Catch-22, where it lacks jurisdiction because the predicate for its claim (i.e., FAA's determination) is not ripe. Yet, it could not state a claim upon which relief could be granted because FAA lacked the power to prohibit the proposed project. Plaintiff asked that the court scrutinize DoD's role in allegedly blocking FAA's "No Hazard" determinations. However, DoD's

assessment of a project is not a substitute for FAA's determinations. Also, plaintiff submitted evidence that DoD and the developer had reached an agreement. The odd nature of this regulatory structure, where FAA's determination must be final for jurisdiction to accrue, though FAA has no power act on the determination once it is final, made it necessary to grant defendant's motion to dismiss plaintiff's regulatory taking claim for lack of jurisdiction and failure to state a claim.

Plaintiff's physical taking claim also presented complex issues. Despite the appeal of plaintiff's contention regarding when the opportunity to extract benefit from the land using newly available technology arose, plaintiff neglected to develop or support its contention; instead it offered mere conclusory statements. Plaintiff provided no case law regarding the relationship between the development of new technologies, a claimant's various property interests, and how such cases should guide the court in evaluating whether its claim was timely filed. Thus, the court granted defendant's motion to dismiss plaintiff' physical taking claim for lack of subject matter jurisdiction.

For the aforementioned reasons, defendant's motion to dismiss plaintiff's regulatory and physical taking claims is **GRANTED**.[7] The Clerk of Court is directed to dismiss the complaint.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*
Robert H. Hodges, Jr.
Senior Judge

---

[7] Plaintiff has not challenged defendant's argument that the court lacks jurisdiction to hear its claims pursuant to the Declaratory Judgment Act, the Administrative Procedures Act, and for injunctive relief. Because plaintiff did not respond to these arguments, defendant maintains that any response is waived. Plaintiff's requests for a declaratory judgment and injunction are dismissed. *See Halim v. United States*, 106 Fed. Cl. 677, 684 (2012) (stating that this "court has never been afforded the general authority to issue declaratory judgments or to grant injunctive relief").